# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 14, 2016

Lyle W. Cayce
Clerk

No. 15-20711

RAYMOND RICHARDSON; JUDITH GOTT; ANGELA KOLMANSBERGER; JAMES CHAPLIN; LUCY GONZALES; DONNA LYNN PONTELLO; BILL EARLY,

> Plaintiffs - Appellants

v.

WELLS FARGO BANK, N.A.; WACHOVIA MORTGAGE CORPORATION; WACHOVIA CORPORATION; WORLD MORTGAGE COMPANY, also known as World Mortgage Co.; WELLS FARGO & COMPANY; WELLS FARGO HOME MORTGAGE, INCORPORATED,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before KING, SMITH, and COSTA, Circuit Judges.

KING, Circuit Judge:

Plaintiffs–Appellants claim that Defendants–Appellees violated the Fair Labor Standards Act ("FLSA") by, *inter alia*, improperly classifying them as exempt employees and failing to pay appropriate overtime. Plaintiffs–Appellants, however, were also class members of a previously settled opt out class action in California state court that released FLSA claims. The district court concluded that the previous settlement could preclude the instant litigation and, after determining that the previous settlement satisfied due

No. 15-20711

process requirements, granted the Defendants–Appellees' summary judgment motion.  We agree and AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from a multi-district litigation involving claims that Defendants–Appellees Wells Fargo Bank, N.A., Wachovia Mortgage Corporation, Wachovia Corporation, World Mortgage Company, Wells Fargo & Company, and Wells Fargo Home Mortgage, Incorporated (collectively "Wells Fargo") violated the FLSA by misclassifying home mortgage consultants ("HMCs") as exempt workers and failing to make appropriate overtime payments.  After the district court conditionally certified two collective actions,[1] the majority of those who had opted in settled their claims in an agreement approved by the district court.  This settlement, however, excluded 1,516 plaintiffs who had opted into the instant action but were members of a previously settled opt out class action in California state court ("California Plaintiffs").  The California Plaintiffs are at the center of this appeal because the parties dispute the preclusive effect of the settlement from the California action: *Lofton et al. v. Wells Fargo*, San Francisco Superior Court Case No. CGC-11-509502 ("*Lofton*").

### A.  The *Lofton* Settlement

The origins of the *Lofton* litigation date back to 2005 when a class action was filed in California state court on behalf of California HMCs alleging, *inter alia*, that Wells Fargo misclassified HMCs as exempt employees and failed to pay appropriate overtime.  That action was removed to federal court, where over the succeeding years class certification was granted by the district court,

---

[1] One collective consisted of Wells Fargo employees and one collective consisted of Wachovia employees.  On or around the end of 2008, Wachovia merged with Wells Fargo.  The complaint alleges that Wachovia similarly misclassified its mortgage consultants ("MCs"), and after the merger, Wachovia stopped employing MCs around the end of 2009.

No. 15-20711

vacated by the Ninth Circuit, and as part of a renewed motion for certification on remand, denied by the district court. *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 606–09, 614 (N.D. Cal. 2010). During this time, class counsel and Wells Fargo engaged in multiple mediation sessions, ultimately reaching an agreement on behalf of California HMCs during a mediation session in February 2011. In March 2011, the *Lofton* action was filed in San Francisco Superior Court asserting state causes of action for, *inter alia*, failing to pay appropriate overtime resulting from the misclassification of HMCs. Notably, the first cause of action relied on alleged violations of the FLSA as grounds for violations of California state law.

On April 27, 2011, the *Lofton* court granted preliminary approval of a settlement for $19 million. As part of the settlement process, class members were sent notice of the proposed settlement, as well as a claim form and an exclusion form. To receive a portion of the settlement, class members had to fill out and return the claim form. To opt out of the settlement, class members had to fill out and return the exclusion form. The *Lofton* settlement covered a broader class period than what is alleged in the instant action.[2]

The settlement contained a release of certain claims against Wells Fargo, which the notice sent to class members recounted in similar language in the following paragraph under the heading "**Release**":

> The Joint Stipulation For Settlement and Release between the parties contains a release of Wells whereby all Class Members (other than those who file Exclusion Forms) fully and finally release and discharge Wells from any and all applicable state and federal law wage-and-hour claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, arising during the Class Members' Released Period,

---

[2] The *Lofton* class included Wells Fargo HMCs in California who worked at any time between February 10, 2001, and March 26, 2011. Wells Fargo reclassified its California HMCs as overtime eligible on March 27, 2011.

including without limitation, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, civil or statutory penalties (including without limitation, penalties under the California Labor Code's Private Attorneys General Act of 2004, as amended in August 2004, California Labor Code sections 2698, 2699.3, and 2699.5), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on the following categories of allegations: (a) any and all claims for the failure to pay any type of overtime or minimum wages; (b) any and all claims for the failure to provide meal and/or rest periods; (c) any and all claims for failure to provide accurate or complete itemized wage statements; (d) any and all claims for failure to timely pay final wages; (e) any and all claims stemming from or based on the alleged misclassification of employees as exempt employees; and (f) and any claims derived from or based upon or related to or arising out of the factual predicate of the Action (collectively, "Class Members' Released Claims"). The Class Members' Released Claims include claims meeting the above definition under any and all applicable California or federal laws, statutes, regulations, and Wage Orders *including any existing under the Fair Labor Standards Act of 1938*, as amended, and California political subdivisions and municipalities. Notwithstanding the foregoing, nothing in this Settlement releases any claims that cannot be released as a matter of law.

(Emphasis added). On July 27, 2011, the *Lofton* court granted final approval of the settlement, making the following relevant findings: (1) the settlement "was entered into in good faith and . . . its terms [were] fair, reasonable and adequate pursuant to Section 382 of the [California] Code of Civil Procedure"; (2) the settlement was "reached as a result of informed and non-collusive arm's length negotiations, and . . . Plaintiff and Wells have conducted extensive investigation and research, and their attorneys are able to reasonably evaluate their respective positions"; and (3) the mailing of the notice of settlement, claim form, and exclusion form to class members "fully satisfie[d] due process requirements." The *Lofton* court also declared that class members "who have not opted out of the Settlement are bound by the release." Finally, the *Lofton* court, "[w]ithout affecting the finality of the Judgment," retained "continuing

jurisdiction over the construction, interpretation, implementation, and enforcement of the Settlement . . . pursuant to California Rule of Court 3.769(h) and California Code of Civil Procedure section 664.6." The judgment was not appealed.

## B. Other Developments in *Lofton*

Separate from the above litigation, the Initiative Legal Group ("ILG") represented about 600 California HMCs in numerous lawsuits against Wells Fargo. In February 2011, ILG also mediated and reached an agreement[3] with Wells Fargo, and Wells Fargo later paid nearly $6 million to ILG. Additionally, ILG was present at the hearing on the preliminary approval of the *Lofton* settlement. During this hearing, *Lofton* class counsel informed the court that the claims of ILG's clients "were essentially settled on the very same day in front of the very same mediator . . . . Wells has a separate settlement agreement with these folks." *Lofton* class counsel continued: "And we're not going to be contacting anyone that are independently represented by . . . these firms. Indeed the thought of the settlement was that these gentlemen representing the two firms would have all their individual plaintiffs opt out. If they did not, then they would be covered by the proposed class settlement."

However, none of the ILG clients opted out of the *Lofton* settlement. This meant that the ILG clients, who were also members of the *Lofton* class, not only could receive some portion of the nearly $6 million payment, but also could receive a portion of the *Lofton* settlement (and were in turn bound by it). After making certain disbursements to its clients, ILG retained nearly $5 million of the $6 million payment as attorneys' fees.

In September 2012, David Maxon, a class member from the *Lofton* settlement and former ILG client, moved to intervene in *Lofton* and for a

---

[3] The parties dispute whether this agreement was tentative.

temporary restraining order requiring, in part, that ILG deposit the payment it received into a trust account.  Maxon argued that the money retained by ILG as attorneys' fees should have been approved by the *Lofton* court as class action attorneys' fees.  The court granted Maxon's motion to intervene and issued a temporary restraining order.  On appeal, the California Court of Appeal affirmed the issuance of the temporary restraining order, finding, in part, that "[t]he class members were entitled to have ILG's claim for fees in variance with their fee agreement, and in such disproportion to the recovery obtained, independently reviewed by the class action court." *Lofton v. Wells Fargo Home Mortg.*, 179 Cal. Rptr. 3d 254, 267, 271 (Ct. App. 2014).  The California Court of Appeal went on to say that "[i]f the court determines that Maxon's allegations are true, it would be within the court's jurisdiction to review the supplemental fee agreement and to order the ILG attorneys to disgorge some or all of the fees already received." *Id.* at 267.

Following remand, multiple motions were filed in the *Lofton* court, culminating in a hearing in June 2015 to resolve 11 pending matters.  The *Lofton* court determined that "ILG's claimed fees are properly construed as class action attorneys' fees" and, therefore, should have been disclosed to the court for approval.  Furthermore, the *Lofton* court held that all of ILG's claimed fees should instead be disbursed to the class on a pro rata basis in proportion to the amount that each class member previously received.  Specifically, the *Lofton* court found that, "[h]aving concealed its purported fee agreement from the Court, and having tried to appropriate those funds to itself without Court approval, this Court determines that ILG is not entitled to any of the claimed fees."

In addition to the above rulings, the *Lofton* court denied a motion to vacate the *Lofton* judgment for three independent reasons: (1) the motion was untimely; (2) "there [was] no basis for [the] [c]ourt to exercise its jurisdiction

to modify or vacate the judgment"; and (3) even if there was a basis, it would be unworkable to vacate the judgment because it would require returning the parties to their positions prior to the judgment, meaning that the class members would have to pay back the money that they received. The *Lofton* court also denied a motion to intervene, which was brought by two of the California Plaintiffs in this action, because (1) the motion was untimely; (2) "the proposed intervention would unduly enlarge the issues before the [c]ourt, and [was] not necessary to [the] matter"; and (3) the court refused to issue an advisory opinion regarding the preclusive effects of the *Lofton* judgment on the instant action.

Several of the issues, including the court's denial of the motion to vacate, are currently on appeal in California state court. The California Plaintiffs who had their motion to intervene denied withdrew their appeal.

## C. The District Court's Grant of Summary Judgment

In the instant action, on September 2, 2014, Wells Fargo moved for summary judgment arguing that the California Plaintiffs were precluded by the *Lofton* settlement because none of the California Plaintiffs had opted out. Of the 1,516 California Plaintiffs, 1,283 filed claim forms in *Lofton* while the other 233 did not file claim forms (and therefore did not receive any settlement payment). After summary judgment briefing was complete, the district court requested additional briefing and eventually stayed the case for six months because of the ongoing developments in *Lofton*.

On November 4, 2015, the district court granted Wells Fargo's motion for summary judgment. First, the district court held that the waiver of FLSA claims as part of the *Lofton* settlement has res judicata effect even though it was accomplished through an opt out class action, finding persuasive the reasoning from *Lipnicki v. Meritage Homes Corp.*, No. 3:10-cv-605, 2014 WL 923524 (S.D. Tex. Feb. 13, 2014). Second, the district court held that there was

no due process violation that would preclude the application of res judicata because the interests of the *Lofton* class representative and class counsel were always aligned with the interests of the California Plaintiffs, and any harm from the settlement fund being diluted was cured when the *Lofton* court required the ILG funds to be disbursed to the class. The district court further found no issues with the notice used in the *Lofton* settlement. Finally, the district court held that the *Lofton* settlement was a final judgment as of July 27, 2011, for res judicata purposes, and the issues currently on appeal in California did not make the judgment any less final. The California Plaintiffs timely appealed.

## II. STANDARD OF REVIEW

This court reviews "[a] grant of summary judgment . . . *de novo*, applying the same standard on appeal that is applied by the district court." *Tiblier v. Diabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 244 (5th Cir. 2006)). "[I]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," then summary judgment should be granted. Fed. R. Civ. P. 56(a). "When reviewing a grant of summary judgment, we review the facts drawing all inferences most favorable to the party opposing the motion." *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 250 (5th Cir. 2012).

Res judicata is an affirmative defense, and the defendant bears the burden to prove that defense. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). However, a plaintiff asserting that preclusion should not apply because the prior class action settlement violated due process has the burden of proving a due process violation. *See Gonzales v. Cassidy*, 474 F.2d 67, 75 (5th Cir. 1973)

8

No. 15-20711

("[G]enerally the class will be bound unless the party attacking the judgment can show that the class was inadequately represented.").[4]

### III. RES JUDICATA

We first turn to the question of whether the *Lofton* settlement—in which a state court approved an opt out class action settlement that released FLSA claims—can preclude the California Plaintiffs' FLSA claims at issue in this appeal. "The Full Faith and Credit Act mandates that the 'judicial proceedings' of any State 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996) (omissions in original) (quoting 28 U.S.C. § 1738). In other words, a federal court must "give state court judgments the same preclusive effect they would have in another court of the same state." *In re Lease Oil Antitrust Litig. (No. II)*, 200 F.3d 317, 320 (5th Cir. 2000).

In analyzing whether the *Lofton* settlement has preclusive effect under the Full Faith and Credit Act, we find instructive the Supreme Court's two-part framework from *Matsushita*: (1) whether "state law indicates that the particular claim or issue would be barred from litigation in a court of that state," and (2) whether the FLSA expressly or impliedly creates an exception to the Full Faith and Credit Act such that we should not give preclusive effect to the judgment of the state court. *Matsushita*, 516 U.S. at 375.

---

[4] The California Plaintiffs do not directly address Wells Fargo's citation to *Gonzales* for the proposition that the party attacking the prior judgment has the burden of establishing a due process violation. While this court is aware that the Tenth Circuit has stated that the party asserting claim preclusion as a defense bears the burden of establishing that there was adequate representation in the prior case, *Pelt v. Utah*, 539 F.3d 1271, 1283–84 (10th Cir. 2008), we do not agree that the Supreme Court's decision in *Taylor v. Sturgell*, 553 U.S. 880 (2008), requires the burden to be placed on the party asserting claim preclusion, *cf.* William B. Rubenstein, *Newberg on Class Actions* § 18:38 (5th ed. 2016) (describing the Tenth Circuit's decision in *Pelt* as relying "on a false analogy").

## A. Res Judicata Under California Law

Under California law, res judicata "applies if (1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." *Fed'n of Hillside & Canyon Ass'ns v. City of L.A.*, 24 Cal. Rptr. 3d 543, 557 (Ct. App. 2004). "A judicially approved settlement agreement is considered a final judgment on the merits." *Howard v. Am. Online Inc.*, 208 F.3d 741, 748 (9th Cir. 2000) (applying California law). In a class action settlement, absent class members are also bound by the doctrine of res judicata. *Villacres v. ABM Indus. Inc.*, 117 Cal. Rptr. 3d 398, 422 (Ct. App. 2011). Moreover, "[a] judgment pursuant to a class settlement can bar [subsequent] claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim *was not presented*, and *could not have been presented*, in the class action itself." *Id.* at 418 (second alteration in original) (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001)).[5]

In *Lofton*, California HMCs asserted causes of action under California law based on, *inter alia*, the failure to pay overtime resulting from the

---

[5] It appears not to be completely clear under California law whether a class action settlement—having been approved by a court and releasing claims that could not have been asserted in the underlying action—would be given preclusive effect because of res judicata principles or contract principles, or both. Neither party briefed the argument that contract principles apply to preclude the instant litigation. *Compare Villacres*, 117 Cal. Rptr. 3d at 585–91 (interpreting a settlement release as part of a res judicata analysis), *with Villacres*, 117 Cal. Rptr. 3d at 597 (Chaney, J., dissenting) ("[T]he interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement." (alteration in original) (quoting *Gen. Motors Corp. v. Superior Court*, 15 Cal. Rptr. 2d 622, 625 (Ct. App. 1993)), *and Howard*, 208 F.3d at 747–48 (discussing the preclusive effect of a settlement release in terms of contract principles and res judicata as two alternative grounds). In any event, the conclusion that we reach below that California law would preclude the FLSA claims at issue here would not be changed regardless of whether a contract theory or res judicata theory is applied.

misclassification of HMCs. *Lofton* proceeded under California's rules allowing opt out class actions,[6] and as part of this process, the California Plaintiffs, along with the other class members in *Lofton*, were sent a notice of the pending settlement and its terms, including a clear release of their FLSA claims. The notice also advised class members that if they did not opt out by a specific date, they would be bound by the settlement terms. Critically, the California Plaintiffs did not opt out. The *Lofton* court then granted final approval of the settlement, finding that it "was entered in good faith and that its terms [were] fair, reasonable and adequate." The *Lofton* court further found that the distribution of the notice of the settlement, claim form, and exclusion form satisfied due process requirements. Under these facts, standard California preclusion rules would bar the FLSA claims raised in the instant action unless the FLSA creates an exception to how preclusion rules apply.

Indeed, the California Plaintiffs do not contend that the *Lofton* release would not have preclusive effect against them if they now asserted other California wage claims. Rather, the California Plaintiffs contend that FLSA claims released as part of an opt out class action settlement can never be given preclusive effect against absent class members (unless they opt in) because they are not parties, or in privity with a party, with respect to the release of FLSA claims. Under the California Plaintiffs' reasoning, because an FLSA collective action requires that a party opt in under 29 U.S.C. § 216(b)[7] in order

---

[6] California's opt out class actions are similar to those under Federal Rule of Civil Procedure 23. *See generally* Cal. Civ. Proc. Code § 382; Cal. Rules of Court, rules 3.760–3.771. In addition to these rules, when there is an "absence of California authority, California courts may look to the Federal Rules of Civil Procedure . . . and to the federal cases interpreting them." Rutter Group, *Cal. Prac. Guide Civ. P. Before Trial* Ch. 14-B, 14:11.20.

[7] Section 216(b) provides, in part, the following:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly

to be bound by the collective action, they never became parties to the release of their FLSA claims given that they did not opt in. Thus, although California preclusion rules may apply to an opt out class action settlement that releases other claims, FLSA claims present an exception to this rule because of § 216(b)'s opt in requirement, according to the California Plaintiffs. In addition, the California Plaintiffs advance two other arguments for why the *Lofton* settlement should not receive preclusive effect: (1) it is not a final judgment because there are pending appeals in California related to the *Lofton* settlement; and (2) the 233 California Plaintiffs who did not submit claim forms in *Lofton* cannot be precluded because they received no payment in exchange for the release of their claims.

### 1. *The* Lofton *Settlement's Release of FLSA Claims*

We reject the California Plaintiffs' position that, because they did not opt into the *Lofton* settlement, they did not become parties to the *Lofton* settlement with respect to releasing their FLSA claims. The California Plaintiffs would not have been parties without opting in had *Lofton* been an FLSA collective action. But that was not the case. Instead, *Lofton* asserted state causes of action in an opt out class action, and the California Plaintiffs became parties to the *Lofton* settlement because they did not opt out. Thus, they became bound by the settlement terms, including the release of their FLSA claims.

The California Plaintiffs' primary argument is that the FLSA creates a special limitation to the extent that California can apply its preclusion rules to opt out class actions. However, the California Plaintiffs point to no authority showing that California would treat the release of FLSA claims as part of a

situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . . .

29 U.S.C. § 216(b).

12

judicially supervised class action settlement any differently under its preclusion law.[8] It is true, as the California Plaintiffs note, that FLSA claims cannot be asserted using an opt out class action procedure. *See, e.g.*, *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (per curiam). But this proposition is inapposite. It takes an additional step to conclude that the FLSA prohibits state courts from supervising and approving an opt out class action settlement that releases FLSA claims, and this step is not supported by § 216(b).

The California Plaintiffs and Wells Fargo point to district court opinions reaching opposite conclusions on whether the FLSA creates an exception to how preclusion rules should apply. *Compare Lipnicki*, 2014 WL 923524, at *13–16 (holding that a class action settlement using an opt out procedure may bar later FLSA claims), *and Kuncl v. Int'l Bus. Mach. Corp.*, 660 F. Supp. 2d 1246, 1252–55 (N.D. Okla. 2009) (same), *with Donatti v. Charter Commc'ns, LLC*, No. 11-4166, 2012 WL 5207585, at *4–6 (W.D. Mo. Oct. 22, 2012) (holding that a class action settlement that proceeded on an opt out basis could not preclude later FLSA claims). For the reasons discussed above, we disagree with *Donatti*'s holding that the FLSA created an exception to how preclusion rules would otherwise apply. Rather, we agree with *Lipnicki*'s reasoning that the FLSA did not create a special exception to the enforceability of judicially approved settlement agreements. 2014 WL 923524, at *14–15. Similar to the prior settlement in *Lipnicki*, the *Lofton* settlement "was negotiated by class

---

[8] We note that a California appellate court reached the opposite conclusion, holding that a settlement could validly release FLSA claims as part of an opt out class action. *Keeler v. AIG Domestic Claims, Inc.*, No. B226691, 2011 WL 6318485, at *13–15 (Cal. Ct. App. Dec. 19, 2011) (unpublished). However, *Keeler* is unpublished, and therefore, it could not be relied on in California for determining whether California would treat the release of FLSA claims as valid. *See* Cal. Rules of Court, rule 8.1115(a). That being said, we reach the same conclusion.

counsel, who had a duty to represent the interest of all class members, and approved by a court after a fairness hearing." *Id.* at *14. The position that an FLSA claim can only be resolved in a state court if it is actually asserted as a cause of action is undermined by the fact that this court has allowed FLSA claims to proceed through arbitration or to be settled privately under certain circumstances. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297–98 (5th Cir. 2004) (arbitration); *Martin*, 688 F.3d at 253–57 (private settlement); *see also Lipnicki*, 2014 WL 923524, at *14 ("And the idea that there is something unique about the FLSA that requires its rights to be enforced only in a federal court is further undermined by the arbitrability of FLSA claims.").

The California Plaintiffs also point to a line of unpublished district court cases that reject the release of FLSA claims as part of an opt out class action settlement. *See, e.g.*, *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2014). We again agree with *Lipnicki*'s reasoning that "[t]hose courts may well have taken the wise approach in exercising their discretion to determine the proper scope of the settlements in those particular cases, but such decisions do little to help with the problem here: how to apply a broad release in an opt-out class that a court has already approved and upon which parties have relied?" *Lipnicki*, 2014 WL 923524, at *16. To the extent that these cases can be interpreted for the proposition that the FLSA provides an absolute bar to the release of FLSA claims in a judicially supervised class action settlement using an opt out procedure, we disagree. As discussed above, the FLSA does not create a special exception that prohibits the enforcement of settlement agreements that release FLSA claims as part of an opt out class action.

    2. *Finality of the* Lofton *Settlement*

The California Plaintiffs also argue that the *Lofton* settlement is not a final judgment under res judicata principles because there are issues currently on appeal in California state court, including the denial of a motion to vacate. Under California law, "the finality required to invoke the preclusive bar of res judicata is not achieved until an appeal from the trial court judgment has been exhausted or the time to appeal has expired." *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 102 Cal. Rptr. 2d 770, 774 (Ct. App. 2000). The California Plaintiffs reason that the *Lofton* judgment is not final because an appeal is currently pending that could vacate the judgment. However, the relevant appeal for preclusion purposes would have been an appeal from the judgment entering the *Lofton* settlement, which did not occur. Thus, the *Lofton* settlement became a final judgment in 2011 when the time to appeal expired. The possibility that some later action may be taken to vacate or affect that judgment after the time to appeal has expired does not alter its finality. *See* 7 Witkin, *Cal. Proc. Judgm.* § 364 (5th ed. 2008) ("A judgment may be final although subject to future modification.").

*3. The 233 California Plaintiffs Who Did Not File Claim Forms*

The 233 California Plaintiffs who did not file claim forms—and therefore, did not receive any portion of the *Lofton* settlement—cannot avoid the preclusive effect of their failure to opt out of the *Lofton* settlement simply because they did not receive a payment. The California Plaintiffs' reliance on *Bodle v. TXL Mortgage Corp.*, 788 F.3d 159 (5th Cir. 2015), is unavailing because that case does not stand for the proposition that a class member in a prior settlement who failed to return a claim form can avoid the preclusive effects of the settlement as if that class member had opted out. The *Lofton* settlement retains its preclusive effect even for the 233 California Plaintiffs who did not receive a payment from the *Lofton* settlement.

No. 15-20711

In sum, the FLSA does not create an exception to how California preclusion law would treat the enforcement of an opt out class action settlement, and the *Lofton* settlement was a final judgment for preclusion purposes. Thus, we conclude that the California Plaintiffs' FLSA claims in the instant appeal would be precluded by the *Lofton* settlement under California law.[9]

## B.  The FLSA Does Not Create an Exception to § 1738

Because California would give preclusive effect to the *Lofton* settlement, we turn to the second inquiry under *Matsushita*: whether the FLSA creates an exception to the Full Faith and Credit Act, 28 U.S.C. § 1738, such that preclusive effect should not be granted here. Similar to the federal statute at issue in *Matsushita*, the FLSA does not contain "express language regarding its relationship with § 1738 or the preclusive effect of related state court proceedings." *Matsushita*, 516 U.S. at 380. Therefore, we must determine whether the FLSA creates an implied exception to § 1738 because there is an "irreconcilable conflict" between the two statutes, *see id.* (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 468 (1982)), while keeping in mind that the Supreme Court has "seldom, if ever, held that a federal statute impliedly repealed § 1738," *id.*

---

[9] The California Plaintiffs also contend that the release of their FLSA claims was not sufficiently scrutinized by the *Lofton* court for fairness and that this issue should prevent preclusive effect. However, the *Lofton* court specifically found that the settlement was "fair, reasonable and adequate," and the settlement contained a clear release of FLSA claims. To the extent that the California Plaintiffs are stating that this court should reconsider the merits of the *Lofton* court's determination that the settlement was fair, whether because of a supposed due process or FLSA requirement, we do not agree that a court on collateral review should do so. *Bodle* and *Martin* are inapposite because those cases involved the review of private settlements, not the collateral review of a judicially approved class action settlement. *See Bodle*, 788 F.3d at 162–65; *Martin*, 688 F.3d at 253–57. In contrast, the *Lofton* settlement included an explicit release of FLSA claims and was judicially supervised and approved as fair.

Here, we conclude that the FLSA does not create an implied exception to § 1738. There is no irreconcilable conflict between allowing preclusive effect to a class action settlement that released FLSA claims and the FLSA's mandate under § 216(b) that FLSA claims cannot be asserted using an opt out class action. The *Lofton* class action did not assert FLSA claims, and therefore, did not violate § 216(b).

Contrary to the California Plaintiffs' position, *Matsushita* supports the conclusion that the FLSA does not create an implied exception to § 1738. In *Matsushita*, the Supreme Court held that, under § 1738, a federal court action was precluded by a state court settlement even though the state court settlement released claims that could only be asserted in federal courts. *Id.* at 370, 380–86. Similar to the federal statute in *Matsushita*, § 216(b) does not "evince any intent to prevent litigants in state court—whether suing as individuals or as part of a class—from voluntarily releasing" FLSA "claims in judicially approved settlements." *See id.* at 381. Indeed, § 216(b) even gives state courts concurrent jurisdiction over FLSA claims. The fact that FLSA claims can be released, and therefore precluded, by the settlement of an opt out class action in state court does not conflict with § 216(b)'s requirement that such claims only be asserted on an opt in basis.

## IV. DUE PROCESS

The California Plaintiffs also argue that, even if the *Lofton* settlement could preclude an FLSA claim, summary judgment is improper because there are issues of fact regarding whether the *Lofton* settlement satisfied due process. According to the California Plaintiffs, there are two due process issues prohibiting summary judgment: (1) there was inadequate representation because of the improprieties committed by ILG and class counsel's response; and (2) the notice sent to class members was inadequate. Neither of these is sufficient to find a due process violation.

The general rule is that "a judgment in a class action will bind the absent members of the class," but there is an exception: "Due process of law would be violated for the judgment in a class suit to be res judicata to the absent members of a class unless the court applying res judicata can conclude that the class was adequately represented in the first suit." *Gonzales v. Cassidy*, 474 F.2d 67, 74 (5th Cir. 1973); *see also Hunter v. Transamerica Life Ins.*, 498 F. App'x 430, 435 (5th Cir. 2012) (per curiam). We have previously employed a two-prong inquiry in examining adequate representation on a collateral attack: "(1) Did the trial court in the first suit correctly determine, initially, that the representative would adequately represent the class? and (2) Does it appear, after the termination of the suit, that the class representative adequately protected the interest of the class?" *Gonzales*, 474 F.2d at 72.

While the first inquiry looks at the trial court's decision to allow the class action to proceed with the prior named plaintiff as the class representative, the second inquiry "involves a review of the class representative's conduct of the entire suit—an inquiry which is not required to be made by the trial court but which is appropriate in a collateral attack on the judgment such as we have here." *Id.* Regarding the second inquiry, the "primary criterion for determining whether the class representative has adequately represented his class for purpose of res judicata is whether the representative, through qualified counsel, vigorously and tenaciously protected the interests of the class." *Id.* at 75.

In *Gonzales*, the class representative, who had received retroactive relief when none of the other class members did, failed to prosecute an appeal. *Id.* at 75–76. We found that failing to prosecute the appeal amounted to inadequate representation because the interests of the class representative and the absent class members diverged. *See id.* Our later cases have highlighted the importance of whether the class representative's and absent

class members' interests remained aligned and whether they received the same relief. *See Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1054 (5th Cir. 1979) (distinguishing *Gonzales* because the absent class member in *Kemp* "received the same relief as all other members of the class"), *overruled on other grounds by Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 560 n.4 (5th Cir. 1983) (en banc); *cf. Taylor*, 553 U.S. at 900 ("A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum . . . [t]he interests of the nonparty and her representative are aligned . . . .").

The California Plaintiffs contend that the *Lofton* settlement fails the second inquiry because the *Lofton* class counsel did not sufficiently protect the interests of the class by taking steps to recover for the class the $6 million payment to ILG. Under the circumstances here, there is no due process violation. The California Plaintiffs focus much of their argument on the alleged improprieties committed by ILG and the steps that they believe the *Lofton* class counsel should have taken in response. However, ILG was not the class counsel, and there is no evidence or allegation that the *Lofton* class representative or class counsel received a benefit from ILG's actions separate from the rest of the class.

At most, the evidence could be interpreted as showing that the *Lofton* class counsel should have done more to notify the *Lofton* court during the settlement process that ILG's clients were not opting out of the settlement and instead submitting claim forms. By doing so and advocating that the $6 million should be disbursed to the class, *Lofton* class counsel may have been able to recover a portion, if not all, of the $6 million for the class as part of the settlement.[10] However, under the circumstances of this case, this does not

---

[10] The district court "agree[d] with the plaintiffs that the interests of the class could have been better served if class counsel had alerted the court to the fact the ILG class members never opted out as soon as they learned about it" and that it appeared from a court

establish a due process violation for inadequate representation because the interests of the class representative and absent class members remained aligned throughout the litigation.  To the extent that the California Plaintiffs suggest that this court should review the *Lofton* class counsel's decisions—even though class counsel's and the class representative's interests did not diverge from those of the other class members—to determine whether class counsel may have been able to recover some of the $6 million in the settlement process for the class had he taken a different action, we decline to do so on a collateral review here.  The issue of whether the $6 million payment to ILG should be disbursed to the class is already being litigated and determined (on appeal now) by California courts.

Second, the notice sent to *Lofton* class members was not constitutionally deficient.  The notice specifically referenced the release of any claims existing under the FLSA.  Contrary to the California Plaintiffs' arguments, the release section in the notice was not unreasonable "legalese boilerplate" or "cryptic." Rather, the notice was clear and sufficient to apprise class members that the settlement included the release of FLSA claims.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'  The notice should describe the action and the plaintiffs' rights in it." (citations omitted) (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314–15 (1950))).  Furthermore, we reject the California Plaintiffs' argument that the notice was constitutionally deficient merely because the accompanying claim form did not repeat the released claims.

---

hearing transcript that "class counsel could have more zealously advocated with regard to the class's interest in the ILG funds."  However, the district court also noted that Wells Fargo had provided the court with an affidavit from the *Lofton* class counsel explaining his actions.

No. 15-20711

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.