PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-3375
_____

GRAHAM LUNDEEN, on behalf of himself and similarly
situated employee

v.

10 WEST FERRY STREET OPERATIONS LLC d/b/a
LOGAN INN,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil No. 2:24-cv-00109
District Judge:  Honorable Joshua D. Wolson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 18, 2025

Before: RESTREPO, McKEE, and SMITH, *Circuit Judges*

(Filed: October 16, 2025)

Hannah M. Schroer
David J. Freedman
Barley Snyder
126 E King Street
Lancaster, PA 17602
     *Counsel for Appellant*

Peter Winebrake
Winebrake & Santillo
715 Twinning Road
Suite 211
Dresher, PA 19025
     *Counsel for Appellee*

————————————————

## OPINION OF THE COURT

————————————————

SMITH, *Circuit Judge.*

This appeal presents a question of first impression which arises at the intersection of the Fair Labor Standards Act ("FLSA") and Rule 23 of the Federal Rules of Civil Procedure: whether the FLSA's opt-in requirement in § 216(b) prohibits named plaintiffs in a class action from settling prospective class members' unasserted FLSA claims as part of an opt-out class settlement under Rule 23(b)(3). The District Court answered in the affirmative and, on that ground alone, denied preliminary approval of a negotiated settlement. Because § 216(b) establishes only the mechanism by which FLSA claims may be litigated, not the conditions under which they may be

2

waived, we hold that the statute does not forbid such settlements. We therefore will vacate the District Court's October 30, 2024 order denying reconsideration and remand so that the District Court may conduct the full fairness inquiry required by Rule 23.

## I.

Defendant-Appellant 10 West Ferry Street Operations LLC ("10 West") owns and operates the Logan Inn, a restaurant and bar in New Hope, Pennsylvania. Plaintiff-Appellee Graham Lundeen worked there as a bartender and server from September 2021 until December 2022. The Inn's bartenders contributed to a tip pool,[1] which was distributed proportionally among them. Lundeen alleges that Bar Manager Randy Charlins, a salaried supervisory employee, also received distributions from that tip pool.

In January 2024, Lundeen filed this action in the Eastern District of Pennsylvania on behalf of himself and other similarly situated employees. He asserted violations of the FLSA, 29 U.S.C. §§ 201–219, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101–333.115, seeking compensatory damages, including lost tip credits, and liquidated damages under § 216(b) of the FLSA.[2] Both claims

---

[1] A "tip pool" is a practice by which customer gratuities are collected and then redistributed among employees who customarily and regularly receive those tips.

[2] Under the FLSA, an employer forfeits its right to claim a "tip credit"—that is, to count a portion of employees' tips toward the minimum wage obligation—when they "allow[ ] managers

3

rested on Charlins' alleged receipt of tip-pool funds that were intended for bartenders. Lundeen styled the case as a hybrid class/collective action, asserting that his FLSA claim should proceed as a collective action under § 216(b), and his PMWA claim as a Rule 23(b)(3) class action.

In March 2024, the parties stipulated to—and the District Court ordered—conditional certification of an FLSA collective comprising: "All individuals who were employed by the Logan Inn as an hourly bartender or server during any week between April 28, 2021, and January 23, 2023, and who contributed to a tip pool that resulted in at least some tips being distributed to Randy Charlins." JA27. Because § 216(b) of the FLSA requires employees to "give[] [their] consent in writing" to become party plaintiffs, Lundeen's counsel mailed notice and "Consent to Join" forms to all putative collective members. JA28. The notice stated: "If you do not join the lawsuit, you will not be part of the 'collective' of individuals pursuing their FLSA rights. Thus, you will not be affected by any judgment or settlement resulting from the FLSA claim." JA31. Ten employees, including Lundeen, opted in by filing written consents.

After some discovery, the parties engaged in a settlement conference before Magistrate Judge Scott W. Reid and succeeded in reaching an agreement in June 2024.

---

or supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2)(B). Similarly, the PMWA allows use of a tip credit only if "[a]ll tips received by such employe [sic] have been retained by the employe [sic] and shall not be surrendered to the employer." 43 P.S. § 333.103(d)(2).

4

Lundeen then filed an unopposed motion for conditional certification of a class under Rule 23(b)(3)[3] and preliminary approval of a class settlement in August 2024. Logan Inn's maximum total payment under the settlement was $100,000 to be distributed to Lundeen, Lundeen's lawyers, and class members. $60,000 would be distributed *pro rata* to all class members who had not opted out without requiring those class members to submit a claim form. In addition, the ten individuals who had previously opted into the FLSA collective would share in an additional $5,000 pool. In exchange, class members, excluding those who affirmatively opted out, would release their wage-and-hour claims, as well as any FLSA claims which had arisen during the relevant period. The parties also attached to their motion a proposed "Notice of Settlement" form to be sent to class members. JA57–60. The notice informed class members that by failing to opt out they would "waive the right to recover both wages and liquidated damages under the FLSA." JA58. The notice also explained how to opt out or object to the settlement.

---

[3] Plaintiff's proposed class definition mirrored the definition of the certified FLSA collective: "Plaintiff [Lundeen], Opt-In Plaintiffs [the ten who joined the FLSA collective], and all other individuals who were employed by [10 West] at the Logan Inn as an hourly bartender or server during any week between April 28, 2021 and January 23, 2023, and who contributed to a tip pool that resulted in at least some tips being distributed to Randy Charlins." JA45. Plaintiff's motion identified 59 putative class members, including Lundeen. JA43.

The District Court convened a hearing on October 1, 2024, not to assess the overall fairness, reasonableness and adequacy of the settlement under Rule 23(e)(2), but specifically to address whether class members who had not opted into the FLSA collective action could nonetheless be required by the class action settlement to waive FLSA claims. Eight days later, the District Court denied preliminary approval of the class settlement. *Lundeen v. 10 W. Ferry St. Operations LLC,* No. 2:24-CV-00109, 2024 WL 4466678, at *4 (E.D. Pa. Oct. 9, 2024). Citing § 216(b)'s command that "[n]o employee shall be a party plaintiff to any . . . action unless he gives his consent in writing," the court reasoned that the agreement was "neither fair nor reasonable" because it "require[d] class members who did not opt in to the FLSA collective to release their FLSA claims." *Id.*[4]

---

[4] While the District Court purportedly declined to hold that "judges can't approve such a release," but rather that "judges shouldn't do so," *id.* at *3 (emphasis omitted), its reasoning left no practical daylight between the two. By concluding that the settlement could not be approved solely because of the FLSA release and declining to assess any other Rule 23(e)(2) factors, the court in substance imposed a categorical prohibition. *See id*. at *4 ("I *cannot* grant preliminary approval of the settlement because it requires class members who did not opt in to the FLSA collective to release their FLSA claims . . .") (emphasis added). This is confirmed by the Court's Oct. 30, 2024, Order denying reconsideration. JA132–36 ("[M]y decision to deny preliminary approval of the settlement turns on my

10 West moved for reconsideration, arguing that § 216(b) imposed no such restriction on releasing FLSA claims. The District Court denied reconsideration on October 30, 2024, but certified the following question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b): "[W]hether Section 216(b) of the Fair Labor Standards Act permits a party to obtain the release of unasserted FLSA claims through a Rule 23(b)(3) opt-out class settlement." JA132–36. This Court granted Logan Inn's § 1292(b) petition on December 10, 2024. On appeal, both named parties urge reversal, contending that § 216(b) does not bar approval of a Rule 23 settlement that includes such releases. We agree.

## II.[5]

We exercise plenary review over a certified question of law. *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.,* 96 F.4th 599, 608 (3d Cir. 2024). Although the District Court certified a single question, our review may reach any matter "fairly included within the certified order." *Barbato v. Greystone All.,* LLC, 916 F.3d 260, 264 (3d Cir.

---

understanding that Section 216(b) of the FLSA *bars* the release of unasserted FLSA claims through a Rule 23(b)(3) opt-out settlement.") (emphasis added).

[5] The District Court had jurisdiction over the FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. It exercised supplemental jurisdiction over the state-law PMWA claim pursuant to 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1292(b).

2019) (*citing Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)). We may not, however, "reach beyond the certified order to address other orders made in the case." *Yamaha,* 516 U.S. at 205.

"We review the denial of a motion for reconsideration for abuse of discretion." *United States v. Kalb*, 891 F.3d 455, 459 (3d Cir. 2018) (citation omitted). A court necessarily abuses its discretion when its ruling rests on an error of law. *See Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 213 n.20 (3d Cir. 2022) ("[A]pplication of an incorrect legal standard is by definition an abuse of discretion.").

**A.**

Because this appeal presents a question of statutory interpretation, "[a]s always, we start with the statutory text[.]" *Garland v. Cargill,* 602 U.S. 406, 415 (2024).

The text of the FLSA provides, in relevant part:

An action to recover the liability prescribed in the preceding sentences [for failure to pay statutorily required overtime or minimum wages under the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. **No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and**

8

> **such consent is filed in the court in which such action is brought**.

29 U.S.C. § 216(b) (emphasis added).

From this language, the District Court concluded that it could not approve a Rule 23 class settlement that required absent class members to release FLSA claims. *Lundeen,* 2024 WL 4466678, at *4. However, the District Court recognized that "[r]easonable minds can disagree about [this] conclusion." JA134. And indeed, they have. While no other Circuit has yet to squarely address this issue,[6] district courts appear to be split. *Compare, e.g., Myles v. AlliedBarton Sec. Servs., LLC,* No. 12-CV-05761, 2014 WL 6065602, at *3 (N.D. Cal. Nov. 12, 2014) ("[A]n opt-out settlement . . . does not work for the

---

[6] The Fifth and Ninth Circuits have confronted related questions, though not in the posture as presented here. In *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442 (5th Cir. 2016), and *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106 (9th Cir. 2018), plaintiffs sought to bring FLSA collective actions after participating in state-court wage-and-hour class settlements. Both courts held that those collective actions were barred by res judicata, giving preclusive effect to the FLSA releases contained in the opt-out settlements. *See Richardson,* 839 F.3d at 449-52; *Rangel,* 899 F.3d at 1111–12. But the application of claim preclusion does not itself determine whether approval of such a settlement was proper at the outset. *See City of Arlington v. FCC,* 569 U.S. 290, 297 (2013) ("[E]ven an erroneous judgment is entitled to res judicata effect.").

9

compromise or release of FLSA claims."); *Tijero v. Aaron Bros., Inc.,* No. 10-cv-01089, 2013 WL 60464, at \*8 (N.D. Cal. Jan. 2, 2013) ("[I]t is contrary to § 216(b) to bind class members to a release of FLSA claims[.]"); *Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 WL 2708399, at \*9 (N.D. Ill. July 12, 2011) ("[R]eleas[ing] the FLSA claims of all class members without the requisite opt-in procedures is improper[.]"); *La Parne v. Monex Deposit Co.,* No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606, at \*3 (C.D. Cal. Nov. 29, 2010) ("[I]t would be contrary to the statute to bind class members who do not affirmatively elect . . . to participate in the FLSA suit[.]"), *with Lunemann v. Kooma III LLC*, No. CV 23-3704, 2024 WL 2133803, at \*2 (E.D. Pa. May 13, 2024) ("[O]pt-in FLSA claims may be properly released through [an] opt-out class settlement[.]"); *Then v. Great Arrow Builders, LLC,* No. 2:20-CV-00800, 2022 WL 562807, at \*4 (W.D. Pa. Feb. 23, 2022) (approving opt-out class settlement releasing FLSA claims); *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 489 (D.D.C. 2019) ("[T]he Court finds little support for the proposition that parties are categorically precluded from including such a release in a binding Rule 23 class-action settlement."); *Cotter v. Lyft, Inc.,* No. 13-cv-04065, 2017 WL 1033527, at \*1–2 (N.D. Cal. Mar. 16, 2017) (rejecting the notion that "a district judge should not approve a settlement in a Rule 23 wage-and-hour class action . . . that releases FLSA claims"), *aff'd sub nom. Cotter v. Page*, No. 17-15648, 2017 WL 4535961 (9th Cir. Sept. 15, 2017). We agree with those courts that have held that § 216(b) of the FLSA provides only a mechanism for opting into collective litigation. Accordingly, we hold that the language of § 216(b) does not bar the release

10

of unasserted FLSA claims in a court-approved Rule 23 settlement.

By its terms, § 216(b) establishes a private right of action for employees to recover under the FLSA. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 253 (3d Cir. 2012). Its plain text requires that employees affirmatively opt in before they may act as party plaintiffs. Courts have therefore recognized that "FLSA claims cannot be asserted using an opt out class action procedure." *Richardson,* 839 F.3d at 451–52; *see also Knepper*, 675 F.3d at 257 (collecting cases for the proposition that "the plain language of [§ 216(b)] bars opt-out class actions to enforce the provisions of the FLSA").

But the statute stops there. Nothing in § 216(b) addresses the *release* of unasserted claims. As the Fifth Circuit observed, while "FLSA claims cannot be asserted using an opt out class action procedure . . . [i]t takes an additional step to conclude that the FLSA prohibits . . . courts from supervising and approving an opt out class action settlement that releases FLSA claims, and this step is not supported by § 216(b)." *Richardson*, 839 F.3d at 451.[7] Put simply, § 216(b) requires written consent to litigate an FLSA claim, but it says nothing

[7] While *Richardson* addressed enforcement rather than initial approval of opt-out settlements releasing FLSA claims, its reasoning nonetheless endorsed the practice. *See id*. at 452 (rejecting the view that "the FLSA provides an absolute bar to the release of FLSA claims in a judicially supervised class action settlement using an opt out procedure"); *Id.* at 441 n.8 (agreeing that "a settlement could validly release FLSA claims as part of an opt out class action").

about waiver of such a claim in settlement. And in that silence "it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 765 (2019). Indeed, reading a statute that governs only how claims may be litigated as also restricting how they may be waived would "not [be] a construction of a statute, but, in effect, an enlargement of it by the court[.]" *Iselin v. United States*, 270 U.S. 245, 251 (1926). Such judicial action is beyond our authority. *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012))).

**B.**

The District Court nevertheless inferred from § 216(b) a supposedly worker-protective principle forbidding such releases. That reading is flawed in several respects.

For starters, even assuming, *arguendo*, that Congress intended to protect workers by adopting the opt-in mechanism, that premise does not authorize courts to "add features that will achieve the statutory 'purposes' more effectively." *Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Newport News Shipbuilding & Dry Dock Co.,* 514 U.S. 122, 136 (1995). As the Supreme Court has explained, we may not "revise legislation . . . just because the text as written creates an apparent anomaly as to some subject it does not address." *Michigan v. Bay Mills Indian Cmty.,* 572 U.S. 782, 794 (2014). Statutes ordinarily reflect a balancing of various competing

12

considerations, and it is "'quite mistaken to assume' . . . that any interpretation of a law that does more to advance a statute's putative goal 'must be the law.'" *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017)); *see also Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018) (rejecting the "flawed premise that the FLSA pursues its remedial purpose at all costs") (citation modified).

For this reason, we have cautioned against relying on "perceived Congressional intent absent any clear textual or doctrinal basis." *Knepper,* 675 F.3d at 259. In *Knepper,* we rejected the notion that Rule 23 class actions asserting state law claims were "inherently incompatible" with the FLSA's opt-in procedure. *Id.* at 253. We endorsed the use of "hybrid" actions, such as the present one, where an FLSA collective and a Rule 23(b)(3) class proceed side by side in the same case. *Id.* at 261–62. We explained that "the plain text of § 216(b) provides no support for the concept of inherent incompatibility" and that courts holding otherwise had impermissibly "reasoned from Congressional intent." *Id*. at 259.

Here, the District Court had to determine if the compatibility we identified in *Knepper* of an FLSA collective action and Rule 23(b)(3) action extended to a settlement of the latter including, *inter alia*, a waiver by prospective FLSA plaintiffs of any such FLSA claim. In doing so the District Court invoked the same rationale we rejected in *Knepper*. It reasoned that such releases would "be an end run around Congress's decision to require opt in party plaintiffs in FLSA cases" and would be "at odds with Congress's intent in adopting an opt-in mechanism under the FLSA." *Lundeen,*

13

2024 WL 4466678, at *2; *see also Knepper,* 675 F.3d at 259 (rejecting the notion that allowing an opt-out class mechanism alongside § 216(b)'s opt-in procedure "'would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement.'") (citations omitted). But what *Knepper* made clear is this: extrinsic considerations—such as policy goals—are relevant to statutory interpretation only insofar as they "shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." 675 F.3d at 259 (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 568 (2005)). By contrast, "[w]here the statutory language is unambiguous, the court should not consider statutory purpose or legislative history." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010), *as amended* (May 7, 2010).

Importantly, the plain text of § 216(b) neither compels nor forbids the release of unasserted FLSA claims in a class settlement. On that point, it is silent. But "Congress's silence does not render the statute ambiguous." *United States v. Craveiro*, 907 F.2d 260, 262 (1st Cir. 1990); *see also New Jersey v. New York,* 523 U.S. 767, 813 (1998) (Breyer, J., concurring) ("[S]ilence is not ambiguity[.]"). Ambiguity exists only when, "despite a studied examination of the statutory context, the natural reading of a provision remains elusive." *In re Price*, 370 F.3d 362, 369 (3d Cir. 2004). Section 216(b)'s natural meaning is not elusive. It creates a private right of action and requires employees to opt-in to litigate their claims; it says nothing about releasing claims that have not been asserted. In short, "'Congress wrote the statute it wrote'—

14

meaning, a statute going so far and no further." *Michigan,* 572 U.S. at 794 (citation omitted).

At all events, the District Court's reading of § 216(b)'s history was mistaken. Although Congress originally enacted the FLSA to safeguard employees,[8] Congress did not have worker-protection in mind when it later adopted the opt-in mechanism. *See generally Knepper,* 675 F.3d at 253–57 (providing a comprehensive overview of § 216(b)'s adoption). In 1946—eight years after the FLSA was enacted—the Supreme Court held that "portal-to-portal" time, such as walking to work on the employer's premises, qualified as compensable work under the Act. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 691 (1946). That decision unleashed thousands of lawsuits seeking back pay—nearly all of which were so called "representative actions" initiated by third-party union officials who lacked any stake in the actions. *Knepper*, 675 F.3d at 255.

It was against that backdrop of "'excessive and needless litigation'" and the "'wholly unexpected liabilities'" it imposed for employers, that Congress passed the Portal-to-Portal Act of 1947[9]—amending § 216(b) to require written consent before an employee could join an action. *Id*. at 255 (citation omitted). Thus, Congress created the opt-in scheme, not as a worker-

---

[8] *See Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739 (1981) ("[T]he principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours[.]" (citing 29 U.S.C. § 202(a)).

[9] Ch. 52, § 5(a), 61 Stat. 84, 87 (codified at 29 U.S.C. § 216(b)).

15

protection measure but "primarily as a check against the power of unions" and a bar to "one-way intervention" whereby plaintiffs could wait for a favorable outcome before choosing to opt in and be bound by the judgment. *Id.* at 260; *see also Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 173 (1989) (stating that the opt-in requirement was added "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions"). Accordingly, we reject the view that permitting the release of unasserted FLSA claims in a Rule 23(b)(3) settlement undermines the congressional purpose of the Portal-to-Portal Act.

In sum, § 216(b) requires written consent to litigate FLSA claims, but it does not forbid the release of unasserted claims through a Rule 23(b)(3) opt-out settlement. To the extent the District Court rested its denial of preliminary approval on a contrary reading, it committed legal error in doing so. Accordingly, we hold that the District Court abused its discretion in denying reconsideration.

## III.

But that is not the end of the matter. As the District Court recognized, whether judges *can* approve opt-out settlements that release FLSA claims is a different inquiry from whether judges *should* do so. *Lundeen,* 2024 WL 4466678, at *3. The former question is an issue of statutory interpretation; the latter turns on whether the settlement is "fair, reasonable, and adequate," subject to the District Court's considerable

16

discretion.[10] Fed. R. Civ. P. 23(e)(2); *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) ("The ultimate decision whether to approve a proposed settlement under this standard is left to the sound discretion of the district court.") (internal quotations omitted). Although there is a "strong judicial policy in favor of class action settlement," *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010), a district court must be mindful to "assur[e] that the settlement represents adequate compensation for the release of the class claims." *In re Gen. Motors,* 55 F.3d at 805; *see also Ehrheart,* 609 F.3d at 593 ("Under Rule 23(e), a district court acts as a fiduciary, guarding the claims and rights of the absent class members."). Indeed, that "special prophylactic function" is vital "to protect the nonparty class members from unjust or unfair settlements affecting their rights." 7B Wright & Miller, *Federal Practice & Procedure* § 1797 (3d ed. 2025). This is especially true where, as here, the court is presented with simultaneous motions for class certification and settlement approval. *Halley,*

---

[10] Review of a proposed class settlement typically follows a two-step process. First, before directing that notice be issued to the class, the court generally grants preliminary approval of the settlement upon a showing that it "will likely be able to . . . approve the proposal under Rule 23(e)(2)[.]" Fed. R. Civ. P. 23(e)(1)(B)(i); *see also, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) (describing this process). Second, after absent class members are notified and afforded the opportunity to object or opt-out, the court holds a fairness hearing and, if satisfied the settlement is "fair, reasonable, and adequate," grants final approval. *See* Fed. R. Civ. P. 23(e)(2).

861 F.3d at 488 (noting that in such situations courts must "be even more scrupulous than usual when they examine the fairness of the proposed settlement") (citation omitted).

Thus, while § 216(b) does not forbid the release of unasserted FLSA claims in opt-out settlements, such releases remain relevant to the court's overall Rule 23(e)(2) analysis. For example, courts that have approved similar settlements have stressed the importance of clear notice to class members of the release and a meaningful opportunity to opt out. *See, e.g., Lunemann*, 2024 WL 2133803, at \*2 (noting that the proposed notice of settlement "provided a clear and comprehensive explanation of the release" and informed class members how to preserve potential FLSA claims); *Great Arrow Builders*, 2022 WL 562807, at \*4 (concluding that the release of FLSA claims was acceptable "particularly because the proposed notice appears to fully inform settlement class members of what they must do to opt-out of the settlement and preserve any FLSA claim they might have"); *Pliego v. Los Arcos Mexican Restaurants, Inc.,* 313 F.R.D. 117, 132 (D. Colo. 2016) ("[A]ny problems with the release language with respect to FLSA claims can be ameliorated by ensuring that the Notice to Class Members . . . conspicuously state[s] the differences between federal and state law claims . . . [and that] the federal claims for which release would be given . . . include those arising under the FLSA.").

Here, the proposed notice did just that. It made plain that class members who wished to preserve potential FLSA claims could do so by excluding themselves from the settlement. JA58–59. While that safeguard likely weighs in favor of approval, ultimately, it is for the District Court to assess the

18

fairness of the proposed settlement in light of the factors we have articulated in our precedents. *See Halley,* 861 F.3d at 489 (identifying nine factors first laid out in *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975) and later expanded in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions,* 148 F.3d 283, 323 (3d Cir. 1998)).

## IV.

For the foregoing reasons, we will vacate the District Court's October 30, 2024 order denying reconsideration and remand for further proceedings consistent with this opinion.

19